ISABELLA HARRISON, &c., RESPONDENT, v. THOMAS HARRISON AND OTHERS, APPELLANTS.

*Will—Part void, part valid—Construction of:*

Courts are inclined to so construe wills as to sustain and give effect to the intention of the testator, so far as the same can be done; and where a part of the provisions of a will are valid, and a part are void, if the void parts can be separated from those parts which are valid, in harmony with the manifest intent of the testator, the valid portions of the will will be sustained.

*W. Fullerton* for Appellants.

*B. F. Dunning* for Respondent.

DAVIES, CH.J.—James Harrison died seized of a large real estate situated in the city of New York. He made his last will and testament, whereby he devised the same upon the following trusts; that is to say:

*First.* To collect, manage, lease, and otherwise dispose of the same, and for that purpose to sell and convey the same, and with the proceeds to improve other portions of his estate, by building thereon, or otherwise improving the same; to mortgage the same or any part thereof, and to invest and reinvest the moneys arising therefrom, at their discretion.

*Second.* To pay, apply, and appropriate one-third of the net income arising from his estate to the use of his wife, during her natural life.

*Third.* To apply and appropriate, during the lifetime of his wife, the other two-thirds of the net income of his estate; and upon the death of his wife, the whole of the net income of his estate to his six children named, during their respective lives. And he declared that the share of his son, John G. Harrison, then a minor, should be applied to his use, in the discretion of his executors, during his minority, and the accumulation, if any, paid to him upon his attaining the age of twenty-one; and that the share of his daughter should be paid

to her ·during her natural life, free from· any claim, control, or interference of any present or future husband.

*Fourth.* After the death of his said wife, and on the death of any child ·bearing issue, then he authorizes the trustees to apply the share of their income to which the parent so leaving issue was ·entitled, to the use of such child or · children during their respective· minorities; and upon. such child or children attaining full age, then he gives, devises, and bequeaths to each of them, as ·capital, and absolutely, their respective portion of that·part of his·estate to. the income ·of which their deceased parent was entitled. But if any of his said· children should die without leaving lawful issue surviving, or if such issue should die under the age. of twenty-one years, then the·testator declared his will to be, that . the share of his· estate (to the income of which such child ·of his so ·dying, without issue .living to· the age of twenty-one years) should revert to and · become part of his residuary and other estate, for the benefit of his other heirs.

It is conceded that the ulterior limitations over, on failure of issue of testator's. children, or said issue dying · under the age of twenty-one, are void. So the Supreme Court held, and the same question arises and is presented in this case as was decided in Savage *v.* Burnham (17 N. Y. 561), viz.: Can those ulterior limitations over be dropped, and the primary disposition of· the estate be assumed to stand? · The Supreme Court thought they could, and gave judgment accordingly, and from that part of the judgment the Defendants appeal.

It is clear·from the provisions of the ˙will, that the testator intended that each of his children should share equally in· the income of his estate during their lives; and it is equally clear that he did not intend that they should have the possession and control of the principal thereof. . He has therefore given, in very .precise.and unequivocal language, one-third of· the income of his. estate to his widow for life, and to each of his children one-sixth of the remaining two-thirds, subject to be augmented upon the death of the widow by one-sixth of the one-third of the income given to her for her life. And in making the provision in favor of

the issue of any child dying leaving issue, the testator evidently considered his estate in the hands of his trustees as separated and divided into six equal and distinct shares or parts.   To the income of one such share or part, each of his children was entitled during his or her life.   As correctly observed by the Supreme Court, " If the testator had not created the trust, that is, if the absolute right of alienation were not suspended by the trust created by the will, there would not be really any question in the case; for then the perpetuity or unlawful suspension of the absolute right of alienation would have been caused solely by the ulterior contingent limitations over, in case any of the children of the testator died without leaving lawful issue, or such issue should die under the age of twenty-one ; and such ulterior limitations being therefore void, the prior provisions or limitations in favor of the widow and children of the testator and their issue would have been valid by the express provision of the statute " (1 Rev. Stat. 723, § 17; Bulkley v. Depeyster, 26 Wend. 21).   Disregarding the limitations over, the trust under the will is so constituted that it must terminate when the two specified lives in being at the date of the will, and at the death of the testator, are spent; that is, the life of the widow, and of each child as to its respective share or part.   It was said in Gilman v. Reddington (24 N. Y. 9) : " If the person primarily designated dies during a trust term lawfully constituted in respect to its duration, there is nothing in the terms or policy of the statute which prevents the use from being shifted to some other object of a testator's bounty.   Nor has it ever been held that the person or persons must all be named or in existence, and known at the creation of the trust.   Such a construction would be quite too technical and narrow.   The law ought not to condemn a succession in favor of the unborn issue of a child who may die before the time which the author of such a trust has lawfully prescribed for its termination.   Future and contingent limitations of real estate in favor of unascertained persons, and especially in favor of the issue expected to be born of a son or daughter, are familiarly known to the law ; and I am satisfied that our statute of uses and trusts does not exclude them where the interest

beneficially given is in rents and profits, as in the case before us. The statute allows the application of rents and profits to the use of ' any person ' (§ 55), and this fairly includes a contingent limitation in favor of persons who are unascertained at the creation of the trust." In Savage *v.* Burnham (supra) the trusts of real estate were:—1. To sell after the death of the widow. 2. That she should, during her life, receive and take to her own use one-third part of the rents and profits of the real estate. 3. The remaining two-thirds of the income to be applied to the maintenance and education of the six sons and four daughters of the testator, named in the will, until the sons should attain the age of twenty-one years and the daughters attain that age or be married respectively. 4. To pay or transfer the principal in equal shares to the sons and daughters—the shares of the sons to become vested at twenty-one, and then to be paid or transferred; the shares of the daughters to be vested in the trustees, the income to be paid to them after twenty-one, or marriage, during life; and upon the death of each daughter leaving issue, her share to go to and vest in such issue. And this Court held the same a valid trust as to the real estate within the statute (1 R. S. 728, § 55). But there was a further devise, that if any of the testator's children should die without issue, then to the survivors, not absolutely, but subject to the same limitations which were applied to their original shares; that is, the parts of shares which should accrue to the surviving daughter upon the decease of one of them were still to remain inalienable until the death of such survivors, in order to determine whether it should go to her issue, or be subject to a further dissolution of ownership in favor of the last survivor. This Court in that case also held that the last devise only was void for remoteness, and that the daughters respectively took the estate intended for them; but that in case of their death without issue, the estate in such shares would be now undisposed of, and would devolve upon those who would be entitled to it under the laws regulating successions upon intestacy. In short, the determination in that case was, that the statutes of perpetuities cut off the estates which were limited to take effect after

the expiration of two lives, and that the disposition was valid during the two lives. The doctrine of this case received the emphatic approval of this Court, and was affirmed in Post v. Hover (33 N. Y. 593). It is a fundamental principle of construction in regard to all instruments and contracts, ut res magis valeat quam pereat; that is to say, the instrument should rather be made available than suffered to fail. Effect should be given to the whole instrument, and to every part of it, if it can be done without violating the rules of law. And it is very apparent that effect cannot be given to this will, and to the manifest intent of the testator, except upon the theory of the separability of the shares of the six children of the testator in the estate held in trust for them, and then each share is held in trust for the life of the widow, and for the life of each beneficiary. Upon the death of either of the beneficiaries leaving issue, the share or portion of the one so dying would vest absolutely in such issue, subject only to life estate of the widow; and such beneficiary dying without issue, the same would vest absolutely in the survivors, subject in the same manner to the widow's life estate. The principle is now well settled that the courts lean in favor of the preservation of all such valid points of a will as can be separated from those that are invalid, without defeating the general intent of the testator. (Post v. Hover, 30 Barb. 313; 33 N. Y. 593; 17 N. Y. 561, 576; Darling v. Rogers, 22 Wend. 483; Gott v. Cook, 7 Paige, 521; S. C., 24 Wend. 641, 664; Depeyster v. Clendining, 8 Paige, 295; Haxtun v. Corse, 2 Barb. Ch. R. 506; Van Vechten v. Van Veghten, 8 Paige, 120; Gilman v. Reddington, 24 N. Y. 9; Everitt v. Everitt, 29 N. Y. 39).

It is no objection to the application of this rule to the case at bar, that the limitations, as well those which are good as the one alleged to be bad, are embraced in a single trust. A single trust created for two purposes, one lawful and the other unlawful, is good for the lawful purpose, although void for the unlawful one. In Darling v. Rogers (supra), the trust was single, viz., to sell or mortgage the assigned estate for the benefit of creditors; and it was held to be a good, valid trust to sell, but void as a trust

to mortgage. The trust in Haxtun *v.* Corse (supra), was the case of a single trust for two purposes, viz., to lease and sell, one lawful and the other unlawful, and the trust to sell was held to be valid, while the other was declared to be void. In Savage *v.* Burnham (supra), as we have seen, the trust was a single trust, embracing both lawful and unlawful purposes, and it was sustained as to the lawful purpose, while for the unlawful purpose it was adjudged to be void. And the same rule was recognized and applied in Gilman *v.* Reddington, Post *v.* Hover, and Everitt *v.* Everitt (supra).

Applying the doctrine of these cases to the one now under consideration, we find no difficulty in upholding the trust created by this will except in so far as it sought to continue the trust as to the shares of the children of the testator dying without issue, or leaving issue dying under the age of twenty-one years. Amory *v.* Lord (5 Seld. 403) was much relied upon as controlling the present case, but it appears to be clearly distinguishable. In that case the testator, who died leaving a wife, children, and grandchildren, devised his real estate to his wife and two other persons, in trust, to receive the net income thereof and apply it to the use of his wife during her life or widowhood, and at her death or marriage to divide the same into as many shares as he should leave children surviving him, the net income of one share to be received by each child during his or her life, and afterward by his or her husband or wife during life or until marriage, and then the fee of each share to vest absolutely in the children of each child, if any, and if none, then in the right heirs of the testator ; and it was held that the entire devise was void, as it suspended the absolute power of alienation beyond the continuance of two lives in being at the time when the devise took effect. It is stated in the opinion of one of the judges, and it is apparent from the whole case, that these considerations controlled the decision ; that the legal and valid objects of the trust, viz., the estate in the rents and profits, &c., devised for the benefit of the children, and the remainder in fee to the grandchildren, were so mixed up with and dependent upon the illegal and void one (the life estate in the surviving

23

husband or wife), that it was impossible to sustain the one without giving effect to the other.

In the light of the authorities already referred to, it seems to me that the void portion of this will can be easily severed from that which it is conceded is legal and valid, and that the judgment of the Supreme Court is correct, and should be affirmed.

All concur.

Affirmed.

JOEL TIFFANY,
State Reporter.